UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CARMEN RODRIGUEZ DE CARRASCO,
Individually and on Behalf of All Other
Persons Similarly Situated,

                                Plaintiffs,

      -against-

LIFE CARE SERVICES, INC. d/b/a "Life
Care", ROSELYN ZELMAN and JOHN
DOES #1-10,

                            Defendants.

**CIVIL ACTION NUMBER:**
**17-cv-05617 (KBF)**

---

## DEFENDANTS' MEMORANDUM OF LAW SUBMITTED IN OPPOSITION TO PLAINTIFF'S MOTION FOR CERTIFICATION OF CLASS AND COLLECTIVE ACTION

---

PECKAR & ABRAMSON, P.C.
Attorneys for Defendants
Life Care Services, Inc. d/b/a "Life
Care" and Roselyn Zelman
41 Madison Avenue, 20th Floor
New York, New York 10010
(212) 382-0909

*On the Brief*: Aaron C. Schlesinger, Esq.

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................... 1

STATEMENT OF FACTS ................................................................................ 2

ARGUMENT ................................................................................................ 4

POINT I ...................................................................................................... 4
    LEGAL STANDARD FOR COLLECTIVE AND CLASS ACTIONS ............................ 4
        A.    Legal Standard for an FLSA Collective Action ........................... 4
        B.    Legal Standard for a Class Action ........................................... 5
                1.    FRCP Rule 23(b)(3) Predominance ................................ 7

POINT II ...................................................................................................... 7
    THE PERTINENT FEDERAL AND LABOR LAW STATUTES AT ISSUE ................. 7
        A.    The FLSA ........................................................................... 8
        B.    New York Labor Law ............................................................ 10
                1.    Wage Parity Act, Minimum Wage Rate and Overtime Payment for HHAs .................................................. 10
                2.    The NYDOL's March 11, 2010 Opinion Letter excluding sleep and meal break periods from time worked for HHAs during 24 hour shifts ................................................ 11

POINT III ..................................................................................................... 15
    PLAINTIFF'S MOTION FOR CLASS AND COLLECTIVE CERTIFICATION MUST BE DENIED BECAUSE A FACT SPECIFIC INDIVIDUALIZED ANALYSIS OF EACH POTENTIAL PLAINTIFF'S TERMS AND CONDITIONS OF EMPLOYMENT MUST BE UNDERTAKEN IN ORDER TO DETERMINE WHETHER PROPER MINIMUM AND OVERTIME WAGES WERE PAID WHICH IS ILL SUITED FOR CLASS-WIDE RESOLUTION ............... 15
        A.    Plaintiff's FLSA Claims ........................................................ 16
        B.    Plaintiff's NYLL 24 Hour Shift Minimum Wage and Overtime Claims ............................................................................... 17

POINT IV ..................................................................................................... 19
    PLAINTIFF'S MOTION FOR CLASS AND COLLECTIVE CERTIFICATION MUST BE DENIED BECAUSE BOTH SHE AND BELLEGARDE WERE PAID THE PROPER MINIMUM WAGES AND OVERTIME RATES AND PROVIDED WITH APPROPRIATE NOTICE PURSUANT TO THE NEW YORK WAGE THEFT PREVENTION ACT ................................................. 19

## TABLE OF CONTENTS

Page

CONCLUSION.................................................................................................................... 22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

**Federal Cases**

Bonn-Wittingham v. Project O.H.R., Inc.,
  2017 WL 2178426 (E.D.N.Y. 2017) ..................................................12, 13, 14, 15

Brown v. Kelly,
  609 F.3d 467 (2d Cir.2010) ....................................................................6, 7

Commercial Union Ins. Co. v. Blue Water Yacht Assoc.,
  289 F. Supp. 2d 337, 341 (E.D.N.Y.2003) ..............................................14

Cowell v. Utopia Home Care, Inc.,
  2016 WL 4186976 (E.D.N.Y.2016) ........................................................16

Cunningham v. Elec. Data Sys. Corp.,
  754 F.Supp.2d 638 (S.D.N.Y.2010) ........................................................5

Flores v. Osaka Health SPA, Inc.,
  2006 WL 695675 (S.D.N.Y.2006)............................................................5

Harem–Christensen Corp. v. M.S. Frigo Harmony,
  477 F.Supp. 694 (S.D.N.Y.1979) ..........................................................14

Hypolite v. Health Care Services of New York, Inc.,
  2017 WL 2712947 (S.D.N.Y.2017).........................................................16

In re Initial Pub. Offering Sec. Litig. ("In re IPO"),
  471 F.3d 24 (2d Cir.2006) .................................................................5, 6, 7

Lynch v. United Services Auto. Ass'n.,
  491 F.Supp.2d 357 (S.D.N.Y.2007) ........................................................5

Mata v. Footbridge, LLC,
  2015 WL 3457293 (S.D.N.Y.2015)..........................................................5

McGlone v. Contract Callers, Inc.,
  867 F.Supp.2d 438 (S.D.N.Y.2012) .....................................................4, 5

Myers v. Hertz Corp.,
  624 F.3d 537 (2d Cir.2010) ....................................................4, 5, 7, 17, 22

Romero v. ABCZ Corp.,
  2015 WL 2069870 (S.D.N.Y.2015)......................................................5, 22

## TABLE OF AUTHORITIES

Page(s)

Romero v. H.B. Auto. Grp., Inc.,
 2012 WL 1514810 (S.D.N.Y.2012)..............................................................5

Sanchez v. JMP Ventures, L.L.C.,
 2014 WL 465542 (S.D.N.Y.2014)................................................................5

Severin v. Project OHR, Inc.,
 2012 WL 2357410 (S.D.N.Y.2012)..........................5, 6, 9, 11, 12, 13, 15, 16, 17, 18

Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.,
 546 F.3d 196 (2d Cir.2008) ......................................................................6

Torres v. Ridgewood Bushwick Senior Citizens Homecare Council, Inc.,
 2009 WL 1086935 (E.D.N.Y.2009) .............................................................9

Wal–Mart Stores, Inc. v. Dukes,
 131 S.Ct. 2541 (2011).......................................................................6, 18


**State Cases**

Andryeyeva v. New York Health Care, Inc.,
 153 A.D.3d 1216, 61 N.Y.S.3d 280 (2d Dep't 2017)..............................13, 14, 15

Kurcsics v. Merchants Mutual Insur. Co.,
 49 N.Y.2d 451, 426 N.Y.S.2d 454 (1980) .....................................................13

Moreno v. Future Care Health Services, Inc.,
 153 A.D.3d 1254, 2017 WL 4018898 (2d Dep't 2017)........................................15

Samiento v. World Yacht Inc.,
 10 N.Y.3d 70, 854 N.Y.S.2d 83 (2008)........................................................12

Tokhtaman v. Human Care, LLC,
 149 A.D.3d 476, 52 N.Y.S.3d 89 (1st Dep't 2017)................................13, 14, 15

Visiting Nurse Service of New York Home Care v. New York
State Dep't of Health,
 5 N.Y.3d 499, 806 N.Y.S.2d 465 (2005)......................................................12


**Federal Statutes**

Fair Labor Standards Act, 29 U.S.C. 201 et seq.....................1, 4, 5, 7, 8, 9, 10, 16, 17, 19, 20, 22

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Rules of Civil Procedure**

Rule 23(a) of the Federal Rules of Civil Procedure ..................................................6

Rule 23(b) of the Federal Rules of Civil Procedure .............................................6, 17

Rule 23(b)(3) of the Federal Rules of Civil Procedure.................................1, 6, 7, 17

**Code of Federal Regulations**

29 C.F.R. § 541.700(a) ...............................................................................................8

29 C.F.R. § 552.6.1 ...............................................................................................8, 9

**State Statutes**

New York Labor Law.................................................1, 3, 4, 10, 11, 17, 18, 22

New York Wage Parity Act.................................................................................10, 20

New York Wage Theft Prevention Act. .......................................1, 2, 3, 4, 19, 21

**New York Codes Rules and Regulations**

12 N.Y.C.R.R. § 142–2.1..........................................................................................11

12 NYCRR § 142–2.2...............................................................................................10

12 N.Y.C.R.R. § 142–3.1......................................................................................12, 13

12 N.Y.C.R.R. § 142–3.1(b)......................................................................................11

12 N.Y.C.R.R. § 142-3.2......................................................................................10, 17

Defendants Life Care Services, Inc. d/b/a "Life Care" ("Life Care") and Roselyn Zelman ("Zelman")(collectively "Defendants") respectfully submit this Memorandum of Law in opposition to Plaintiff Carmen Rodriguez De Carrasco's ("Plaintiff") within Motion seeking the Court's certification of a Class and Collective Action.

## PRELIMINARY STATEMENT[1]

In this case, Plaintiff alleges that Defendants violated the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") by failing to pay her proper minimum wage/wage parity, overtime and spread of hours. Plaintiff further alleges that Defendants failed to provide her with proper notice as required by the New York Wage Theft Prevention Act. By way of the instant motion, Plaintiff seeks both collective certification pursuant to 29 U.S.C. § 216(b) and class certification pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure ("FRCP") over the following group of employees:

    a.    employees who were formerly employed by Defendants as home health aides ("HHA") at any time since July 24, 2014 to the entry of judgment in this case ("Collective Action Period"); and

    b.    employees who were non-exempt employees within the meaning of the FLSA, who were not paid minimum wages and/or overtime compensation at rates not less than one-half times their regular rate of pay for hours worked in excess of forty (40) hours per work week.

Simply put, Plaintiff seeks to represent a class of non-exempt employees employed during the Collective Action Period who were not properly paid minimum wage and overtime rates. As discussed more fully below, pursuant to well settled law of the Second Circuit, Plaintiff's motion for class and collective certification must be denied because a fact specific individualized

---

[1] Unless otherwise noted, all Exhibits cited herein refer to the Exhibits annexed to the Declaration of Roselyn Zelman submitted in opposition Plaintiff's within motion.

analysis of each potential plaintiff's terms and conditions of employment must be undertaken in order to determine whether proper minimum and overtime wages were paid which is ill-suited for class-wide resolution. Moreover, notwithstanding foregoing, the motion must be denied because both Plaintiff and Marie F. Bellegarde ("Bellegarde"), who has consented to join this action as an additional plaintiff and is referenced in the motion, were paid proper hourly, minimum wage and overtime rates and provided with appropriate notice pursuant to the New York Wage Theft Prevention Act.

## STATEMENT OF FACTS

Life Care is a licensed home care services agency located at 1723 Avenue M, Brooklyn, New York. (See Zelman Affirmation at paragraph 2). Life care provides 24 hour home health care services to the aged and infirmed throughout the five boroughs of New York City. (See Zelman Affirmation at paragraph 2). Life Care employs Home Health Aides ("HHA") to perform such services. (See Zelman Affirmation at paragraph 3)(See Exhibit "E").

HHAs who work 24 hour shifts are advised and required to acknowledge that they are only permitted to work 13 hours during such shifts and that during the remaining 11 hours they are required to use 8 hours for uninterrupted sleep breaks and 3 hours for uninterrupted meal breaks. (See Exhibit "A"). HHAs are paid for 13 hours of a 24 hour shift based on the fact that they do not work 11 hours of such shifts due to their 8 hour sleep and 3 hour meal breaks. (See Exhibit "A"). If an HHA is unable to take an 8 hour sleep or 3 hour meal break due to the client's condition, or for any other reason, the HHA is required to report the issue to his or her supervisor who will then take action immediate to remedy the issue. (See Exhibit "A").

The decision to implement the above policy to pay HHAs for 13 hours of a 24 hour work shift based on an 8 hour sleep and 3 hour meal break was based on a March 11, 2010 New York Department of Labor Opinion Letter entitled "Live–In Companions." (See Exhibit "B"). The

decision was further based on the method that Medicaid provides reimbursement to Life Care.  In this regard, consistent with the rationale of the Opinion Letter, reimbursement entities such as Medicaid only provide payment to home health care agencies such as Life Care for 13 hours of a 24 hour shift on the basis that the HHA does not work during the remaining 11 hours of the shift due to sleep and meal breaks.  (See Exhibit "C").  Such entities will only provide reimbursement for the employment of two HHAs working 12 hour shifts over the course of 24 hours under special circumstances where it could be shown that due to the client's medical condition, the client does not get appropriate sleep thereby requiring 24 hours of total care. (See Exhibit "C").

HHAs provide health care services to clients at the direction of a written Plan of Care which identifies the exact functions that need to be performed for a specific client based on the client's individual health condition and related needs.  (See Exhibit "D").  Each plan of care is different due to the differing needs of a client resulting from his or her individual health condition. (See Zelman Affirmation at paragraph 10).

Plaintiff was employed by Life Care as an HHA from on or about July 28, 2009 to on or about January 8, 2016.  (See Zelman Affirmation at paragraph 11).  During the course of the July 24, 2014 to entry of judgment Collective Action Period proposed by Plaintiff, Plaintiff predominantly worked as an HHA performing home health care services to clients on 24 hour "Live In" shifts.  (See Zelman Affirmation at paragraph 12)(See Exhibit "E").  However, on occasion, Plaintiff worked on hourly shifts of 12 hours or less. (See Zelman Affirmation at paragraph 12)(See Exhibits "E" and "F").  Plaintiff was paid all proper minimum and overtime wages during the course of her employment at Life Care (See Exhibit "F").  Plaintiff was also provided with proper Notice of Pay Rate and Payday Under Section 195.1 of the New York State Labor Law as required by the New York Wage Theft Prevention Act. (See Exhibit "G").

Maria F. Bellegarde ("Bellegarde") was employed by Life Care as an HHA for the time period of on or about September 22, 2015 to on or about September 16, 2016. (See Zelman Affirmation at paragraph 16). During the course of the Collective Action Period, Bellegarde worked 12 hour shifts as an HHA performing home health care services to clients. (See Zelman Affirmation at paragraph 17). Bellegarde was paid all proper minimum and overtime wages during the course of her employment at Life Care (See Exhibit "H"). Bellegarde was also provided with proper Notice of Pay Rate and Payday Under Section 195.1 of the New York State Labor Law as required by the New York Wage Theft Prevention Act. (See Exhibit "I").

## ARGUMENT

## POINT I

## LEGAL STANDARD FOR COLLECTIVE AND CLASS ACTIONS

**A.      Legal Standard for an FLSA Collective Action**

The Second Circuit Court of Appeals has endorsed a two-step framework for determining whether the court should certify an FLSA case as a collective action under 29 U.S.C. § 216(b). Myers v. Hertz Corp., 624 F.3d 537, 554-555 (2d Cir.2010). This process entails analysis of whether prospective plaintiffs are "similarly situated" at two different stages: an early "notice stage" and again after discovery is fundamentally complete. McGlone v. Contract Callers, Inc., 867 F.Supp.2d 438, 442 (S.D.N.Y.2012). At stage one, the court makes "an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." Myers, 624 F.3d at 555. At stage two, after additional plaintiffs have opted in, "the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." Id. If the court concludes that they are not, the action may be "de-certified." Id. at 555.

During the first stage, which is at issue herein, the evidentiary standard is lenient. Mata v. Footbridge, LLC, 2015 WL 3457293, at *2 (S.D.N.Y.2015). The plaintiff need only "make a modest factual showing that [she] and potential opt-in plaintiffs together were victims of a common policy or plan that violated the [FLSA]." Romero v. ABCZ Corp., 2015 WL 2069870, at *1 (S.D.N.Y.2015) citing Myers, 624 F.3d at 555). That being said, "certification is not automatic." Romero v. H.B. Auto. Grp., Inc., 2012 WL 1514810, at *10 (S.D.N.Y.2012). Plaintiff's burden of proof is low, but "it is not non-existent." Sanchez v. JMP Ventures, L.L.C., 2014 WL 465542, at *1 (S.D.N.Y.2014). The "modest factual showing" required for conditional certification "cannot be satisfied simply by unsupported assertions." Myers, 624 F.3d at 555. Plaintiff must offer "actual evidence of a factual nexus" between her own experience and the experiences of those she claims as "similarly situated," rather than "mere conclusory allegations." Flores v. Osaka Health SPA, Inc., 2006 WL 695675, at *2 (S.D.N.Y.2006). In considering Plaintiff's motion, "the [C]ourt does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." Cunningham v. Elec. Data Sys. Corp., 754 F.Supp.2d 638, 644 (S.D.N.Y.2010) quoting Lynch v. United Services Auto. Ass'n., 491 F.Supp.2d 357, 368 (S.D.N.Y.2007). It merely "examines the pleadings and affidavits to determine whether the named plaintiffs and putative class members are similarly situated." McGlone, 867 F.Supp.2d at 442. If the Court finds that they are, it will conditionally certify the class and order that notice be sent to potential class members. Cunningham, 754 F.Supp.2d at 644.

**B.   Legal Standard for a Class Action**

"[A] district judge may not certify a class without making a ruling that each Rule 23 requirement is met." In re Initial Pub. Offering Sec. Litig. ("In re IPO"), 471 F.3d 24, 27 (2d Cir.2006); Severin v. Project OHR, Inc., 2012 WL 2357410 * 4 (S.D.N.Y.2012). Pursuant to

Rule 23(a) of the FRCP, a plaintiff will only be able to sue as a class representative if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. FRCP Rule 23(a); see Brown v. Kelly, 609 F.3d 467, 475 (2d Cir.2010). "What matters to class certification is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." Severin citing Wal–Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2551 (2011). Dissimilarities within the proposed class are what have the potential to impede the generation of common answers. Id. citing Wal–Mart Stores, Inc. If the Rule 23(a) criteria are satisfied, an action may be maintained as a class action only if it also qualifies under at least one of the categories provided in Rule 23(b). FRCP Rule 23(b); Brown, 609 F.3d at 476.

In this case, Plaintiff seeks to certify a class under FRCP 23(b)(3). FRCP 23(b) permits certification "if the questions of law or fact common to class members predominate over any questions affecting only individual members, and ... a class litigation is superior to other available methods for fairly and efficiently adjudicating the controversy." FRCP Rule 23(b)(3); Brown, 609 F.3d at 476. "In evaluating a motion for class certification, the district court is required to make a 'definitive assessment of Rule 23 requirements, notwithstanding their overlap with merits issues,' and must resolve material factual disputes relevant to each Rule 23 requirement." Brown, 609 F.3d at 476 quoting In re IPO, 471 F.3d at 41. "The Rule 23 requirements must be established by at least a preponderance of the evidence." Brown, 609 F.3d at 476. In other words, the district judge must "receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met." Teamsters

Local 445 Freight Div. Pension Fund v. Bombardier, Inc., 546 F.3d 196, 204 (2d Cir.2008). The burden of proving compliance with all of the requirements of Rule 23 rests with the party moving for certification. In re IPO, 471 F.3d at 40.

### 1.      FRCP Rule 23(b)(3) Predominance

"As a general matter, the Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Brown, 609 F.3d at 476. The predominance requirement's "purpose is to ensure that the class will be certified only when it would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Myers, 624 F.3d at 547. The predominance requirement is met only "if the plaintiff can establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof." Brown, 609 F.3d at 483. The requirement that the court conduct a "rigorous analysis" to ensure "actual, not presumed conformance" with the Rule 23 requirements applies with "equal force to ... those set forth in Rule 23(b)(3)." In re IPO, 471 F.3d at 33 n. 3.

## POINT II

## THE PERTINENT FEDERAL AND LABOR LAW STATUTES AT ISSUE

Plaintiff seeks to represent a class of employees of Defendants who meet the following criteria:

  a.      employees who were formerly employed by Defendants as home health aides ("HHA") at any time since July 24, 2014 to the entry of judgment in this case ("Collective Action Period"); and

  b.      employees who were non-exempt employees within the meaning of the FLSA, who were not paid minimum wages and/or overtime compensation at rates not less than one-half times their regular rate of pay for hours worked in excess of forty (40) hours per work week.

Simply put, Plaintiff seeks to represent a class of non-exempt employees employed during the Collective Action Period who were not properly paid minimum wage and overtime rates.   A detailed analysis of the relevant pertinent statutes and related factors is addressed below.

**A.      The FLSA**

Pursuant to Section 207 of the FLSA, employees must be compensated "at a rate not less than one and one-half times the regular rate at which [they are] employed" for every hour worked in excess of forty in a given work week. 29 U.S.C. § 207(a)(1).  However, "[t]he FLSA contains several express statutory exemptions from the overtime payment requirement." See 29 U.S.C. § 213(a) (establishing employees exempt from minimum wage and maximum hour requirements).   In order to be exempt from the FLSA's overtime pay requirements, "an employee's 'primary duty' must be the performance of exempt work." 29 C.F.R. § 541.700(a).

Relevant for purposes of the instant motion, up until October 12, 2015, regardless of the status of the HHA's employer, the FLSA's overtime pay provisions did not apply to "any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves ...." 29 U.S.C. § 213(a)(15). The FLSA's executing regulations (the "Regulations") further provide that: the term companionship services shall mean those services which provide fellowship, care, and protection for a person who, because of advanced age or physical or mental infirmity, cannot care for his or her own needs. Such services may include household work related to the care of the aged or infirm person such as meal preparation, bed making, washing of clothes, and other similar services. 29 C.F.R. § 552.6.1.  They may also include the performance of general household work: Provided, however, that such work is incidental, i.e., does not exceed 20 percent of the total weekly hours worked. 29 C.F.R. § 552.6.1.  Accordingly, courts distinguish between household work performed during the course of providing "fellowship, care, and,

protection" for a patient and "general household work" unrelated to the provision of care. See

Severin v. Project Ohr, Inc., 2012 WL 2357410, at *5-6 (S.D.N.Y.2012) ("[T]he applicability of

the [companionship services] exemption to a particular home attendant is an individualized, fact-

specific determination of whether ... the home attendant performed general household work more

than 20 percent of the time, and of course any ... household work that is related to the fellowship,

care or protection of their client wouldn't negate the exemption."); Torres v. Ridgewood

Bushwick Senior Citizens Homecare Council, Inc., 2009 WL 1086935, at *3 (E.D.N.Y.2009)

(observing that the Regulations expressly differentiate between "general household work," which

is subject to the twenty percent limitation, and "household work related to the care of the aged or

infirm person," which is not). To that end, in a March 16, 1995 Opinion Letter, the United States

Department of Labor ("USDOL") Wage and Hour Division opined that "such activities as

cleaning the patient's bedroom, bathroom or kitchen, picking up groceries, medicine, and dry

cleaning would be related to personal care of the patient and would be the type of household

work that would be exempt work for purposes of section 13(a)(15) of the FLSA." See U.S. Dep't

of Labor, Opinion Letter, Fair Labor Standards Act (FLSA), 1995 WL 1032475, at *1 (Mar. 16,

1995).  In contrast, the USDOL opined that "activities involving heavy cleaning such as cleaning

refrigerators, ovens, trash or garbage removal and cleaning the rest of a 'trashy' house would be

general household work or nonexempt work that is subject to the 20 percent time limitation." Id.

As of October 13, 2015, the above exemption was amended to exclude HHAs that are employed

by agencies such as Life Care. (See U.S. Dept. of Labor Wage and Hour Division Website

Notification at https://www.dol.gov/whd/homecare/litigation.htm at Exhibit "J").  The new rule

was not enforced until November 12, 2015 due to a required 30 day notice and waiting period.

(See Exhibit "J").

**B.      New York Labor Law**

    **1.      Wage Parity Act,  Minimum Wage Rate and Overtime Payment for HHAs**

Pursuant to 12 N.Y.C.R.R. § 142-3.2, an employer shall pay an employee for overtime at a minimum wage rate of one and one-half times the employee's regular rate in the manner and methods provided in and subject to the exemption of sections 7 and 13 of [the FLSA]. 12 N.Y.C.R.R. § 142–3.2. Thus, the NYLL incorporates by reference the FLSA exemptions to determine an employee's proper rate of overtime pay under the NYLL. See Counsel Opinion Letter, N.Y. Dep't of Labor, RO–07–0069 Overtime—Companions (July 11, 2007), available at http:// labor.ny.gov/legal/counsel-opinion-letters.shtm.  12 NYCRR § 142–2.2 states "... that all employers shall pay overtime at a rate of one and one-half times the employee's regular rate of pay, unless the employment is covered by one of the FLSA exemptions, in which case the employer shall pay overtime at the rate of one and one-half times the minimum wage."  12 NYCRR § 142–2.2. Consequently, home attendants who fall within the FLSA's companionship services exemption are entitled by New York law to "overtime at a wage rate of one and one-half times the basic minimum hourly rate." 12 N.Y.C.R.R. § 142–3.2.  However, for the same reasons as stated above in section A supra, once the amendment to the FLSA companionship exemption took effect, October 13, 2015, HHAs employed by agencies are entitled to overtime at a wage rate of one and one-half times their regular hourly rate. (See Exhibit "J").

The wage parity minimum wage rate for the time period March 1, 2014 to February 28, 2015 was $9.50 per hour. (See Exhibit "K").  The wage parity minimum wage rate for the time period March 1, 2015 to February 28, 2016 was $10.00 per hour. (See Exhibit "L"). The wage parity minimum wage rate for the time period March 1, 2016 to February 28, 2017 was $10.00 per hour. (See Exhibit "M"). The wage parity minimum wage rate for the time period December 31, 2016 through December 30, 2017 was amended to $11.00 per hour. See Exhibit "N".

2. **The NYDOL's March 11, 2010 Opinion Letter excluding sleep and meal break periods from time worked for HHAs during 24 hour shifts**

The NYLL requires employers to pay their employees the minimum wage "for each hour worked". NYLL § 652(1).  New York law further provides:

> The minimum wage shall be paid for the time an employee is permitted to work, or is required to be available for work at a place prescribed by the employer.... However, a residential employee-one who lives on the premises of the employer-shall not be deemed to be permitted to work or required to be available for work:
>
> (1) during his or her normal sleeping hours solely because such employee is required to be on call during such hours; or
>
> (2) at any other time when he or she is free to leave the place of employment.

12 N.Y.C.R.R. § 142–3.1(b).  A March 11, 2010 NYDOL Opinion Letter (the "NYDOL Opinion Letter") interprets New York's minimum wage regulation as it pertains to "live-in companions".

The DOL Opinion Letter states:

> [I]t is the opinion and policy of this Department that live-in employees must be paid not less than for thirteen hours per twenty-four hour period provided that they are afforded at least eight hours of sleep and actually receive five hours of uninterrupted sleep, and that they are afforded three hours for meals. If an aide does not receive five hours of uninterrupted sleep, the eight-hour sleep exclusion is not applicable and the employee must be paid for all eight hours. Similarly, if the aide is not actually afforded three work-free hours for meals, the three-hour meal period exclusion is not applicable.

Counsel Opinion Letter, N.Y. Dep't of Labor, RO–09–00169 Live–In Companions (March 11, 2010), available at http://labor.ny.gov/legal/counsel-opinion-letters.shtm (interpreting 12 N.Y.C.R.R. § 142–2.1)(See Exhibit "B"). "The [DOL's] interpretation of a statute it is charged with enforcing is entitled to deference. Severin v. Project OHR, Inc., 2012 WL 2357410 * 8-9 (S.D.N.Y.2012). The construction given statutes and regulations by the agency responsible for their administration, if not irrational or unreasonable, should be upheld." Id. citing Samiento v.

World Yacht Inc., 10 N.Y.3d 70, 79, 854 N.Y.S.2d 83 (2008). An agency's interpretation of a regulation is not entitled to deference, however, if it "conflicts with the plain meaning of the promulgated language." Id. quoting Visiting Nurse Service of New York Home Care v. New York Stated Dep't of Health, 5 N.Y.3d 499, 506, 806 N.Y.S.2d 465 (2005).

It is well settled in the Second Circuit that the DOL's interpretation of the NYLL's minimum wage regulation is entitled to deference and must be upheld and applied. Id.; Bonn-Wittingham v. Project O.H.R., Inc., 2017 WL 2178426 * 2-3 (E.D.N.Y. 2017). The regulation obligates employers to pay non-exempt employees the minimum wage "for the time [employees are] permitted to work, or [are] required to be available for work at a place prescribed by the employer [.]" Id. citing 12 N.Y.C.R.R. § 142–3.1. The NYDOL Opinion Letter, in turn, interprets what it means to be "available for work at a place prescribed by the employer" in the context of home health aides working 24–hour shifts in the home of a client. Id. According to the NYDOL, a "live-in" home health aide is only "available for work at a place prescribed by the employer" for thirteen hours of the day, provided the aide is afforded at least eight hours for sleep and actually receives five hours of continuous sleep and three hours for meal breaks. Id.; 9See Exhibit "B"). The DOL's interpretation does not conflict with the plain meaning of the regulatory language. Id.; Bonn-Wittingham. The phrase "available for work at a place prescribed by the employer" fairly means more than merely being physically present at the place prescribed by the employer. Id. Otherwise, the words "available for work" would be surplusage. Id. The phrase as a whole goes beyond simple physical location to imply as well a present ability to work, should the employee be called upon to do so. Id. The NYDOL's construction of the regulation, finding that a live-in employee who is afforded at least eight hours of sleep time and actually attains five hours of continuous sleep and three hours for meal breaks, lacks any such

present ability to perform work during those hours, does not conflict with the regulatory language. Id.; Bonn-Wittingham.

The DOL's interpretation is likewise not unreasonable or irrational. Id. "Where the interpretation of a statute or its application involves knowledge and understanding of underlying operational practices ... courts regularly defer to the governmental agency charged with the responsibility for administration of the statute." Id. quoting Kurcsics v. Merchants Mutual Insur. Co., 49 N.Y.2d 451, 459, 426 N.Y.S.2d 454 (1980). Applying a general minimum wage regulation to the specific and unusual employment context of home health aides working 24–hour live-in shifts is precisely such an interpretive task. Id.  Thus, pursuant to the NYDOL Opinion Letter, HHAs such as Plaintiff, may be paid a minimum of thirteen hours per twenty-four hour shift period as long as they are afforded at least eight hours of sleep, actually receive five hours of uninterrupted sleep and three hours for meal breaks. Id.; Bonn-Wittingham; (See Exhibit "B"). [2]

It is understood that according to Plaintiff, this Court is required to follow the holdings in the New York State Appellate Division cases Tokhtaman v. Human Care, LLC, 149 A.D.3d 476, 52 N.Y.S.3d 89 (1st Dep't 2017) and Andryeyeva v. New York Health Care, Inc., 153 A.D.3d 1216, 61 N.Y.S.3d 280 (2d Dep't 2017), where it was held that the NYDOL Opinion Letter at issue only applies to HHAs that permanently reside at the home of the client, and therefore, HHAs who work 24 hour shifts but do not permanently reside at the client's home are entitled to

---

[2] It is of import to note that consistent with the rationale of the NYDOL's Opinion Letter, reimbursement entities such as Medicaid only provide payment to home health care agencies such as Life Care for 13 hours of a 24 hour shift on the basis that the HHA does not work during the remaining 11 hours of the shift due to sleep and meal breaks.  (See Exhibit "C").  Such entities will only provide reimbursement for the employment of two HHAs working 12 hour shifts over the course of 24 hours under special circumstances where it could be shown that due to the client's medical condition, the client does not get appropriate sleep thereby requiring 24 hours of total care. (See Exhibit "C"). The fact that Medicaid reimbursement is based upon reliance of the aforesaid sleep and meal time exemptions further shows that the NYDOL Opinion letter is valid warranting deference.

payment of wages for all 24 hours that they remain at the client's home regardless of sleep and meal breaks.  Plaintiff is mistaken.

In this regard, when presented with the exact same argument regarding the NYDOL Opinion Letter, the court in <u>Bonn-Wittingham</u> stated "the [District] [c]ourt is not bound by rulings of intermediate or lower state courts on an issue on which the highest court of the state has not spoken," <u>Id</u>. quoting <u>Commercial Union Ins. Co. v. Blue Water Yacht Assoc.</u>, 289 F. Supp. 2d 337, 341 (E.D.N.Y.2003) <u>citing</u> <u>Harem–Christensen Corp. v. M.S. Frigo Harmony</u>, 477 F.Supp. 694, 697 (S.D.N.Y.1979).  The court then found that the New York Court of Appeals is not likely to follow <u>Tokhtaman</u>, one of the cases relied upon by Plaintiff because it erroneously only applied the sleep and meal time exemptions to HHAs that actually reside at the home of the client and not those who perform the exact same job functions during 24 hour shifts but have separate residences. <u>Id</u>.

Consistent with the Appellate Courts' misinterpretation of the NYDOL Opinion Letter as held by the Court in <u>Bonn-Wittingham</u>, and in response to the decisions relied upon by Plaintiff, on October 6, 2017, the NYDOL enacted an emergency regulation clarifying that moving forward, the sleep and meal time exemptions do in fact apply to HHAs that work 24 hour shifts and live at separate residences than that of their clients.  (See 10/25/17 N.Y. St. Reg. LAB-43-47-00003-E at Exhibit "O"). The NYDOL's stated purpose for enacting the emergency regulation is as follows:

> Specific reasons underlying the finding of necessity:
>
>> This emergency regulation is needed to preserve the status quo, prevent the collapse of the home care industry, and avoid institutionalizing patients who could be cared for at home, in the face of recent decisions by the State Appellate Divisions that treat meal periods and sleep time by home care aides who work shifts of 24 hours or more as hours worked for purposes of state (but not

federal) minimum wage. As a result of those decisions, home care
agencies may cease to provide home care aides thereby threatening
the continued operation of this industry that employs and serves
thousands of New Yorkers by providing vital, lifesaving services
and averting the institutionalization of those who could otherwise
be cared for at home. Because those decisions relied upon the
Commissioner's regulation, and rejected the Department's opinion
letters as inconsistent with that regulation, this emergency adoption
amends the relevant regulations to codify the Commissioner's
longstanding and consistent interpretations that such meal periods
and sleep times do not constitute hours worked for purposes of
minimum wage and overtime requirements.  (See Exhibit "O").[3]

In light of the foregoing, this Court is not obligated to follow the holdings of the cases
cited by Plaintiff and should instead hold that the sleep and meal time exemptions identified in
the DOL Opinion letter are valid and apply to all HHAs working 24 hour shifts regardless of the
location of their residence as the courts located in the Second Circuit did in Severin and Bonn-
Wittingham and the NYDOL clarified in its emergency regulation.

## POINT III

**PLAINTIFF'S MOTION FOR CLASS AND COLLECTIVE
CERTIFICATION MUST BE DENIED BECAUSE A FACT SPECIFIC
INDIVIDUALIZED ANALYSIS OF EACH POTENTIAL PLAINTIFF'S
TERMS AND CONDITIONS OF EMPLOYMENT MUST BE
UNDERTAKEN IN ORDER TO DETERMINE WHETHER PROPER
MINIMUM AND OVERTIME WAGES WERE PAID WHICH IS ILL
SUITED FOR CLASS-WIDE RESOLUTION**

As discussed more fully below, Plaintiff's motion for class and collective certification
must be denied because a fact specific individualized analysis of each potential plaintiff's terms
and conditions of employment must be undertaken in order to determine whether proper
minimum and overtime wages were paid which is ill-suited for class-wide resolution.

---

[3] It should be noted that the Defendant in the Tokhtaman case has moved for leave to the NY Court of Appeals to
have the validity of the NYDOL's Opinion letter decided and is currently waiting on a decision.  Moreover, both the
Defendants in Andryeyeva and its companion case Moreno v. Future Care Health Services, Inc., 153 A.D.3d 1254,
2017 WL 4018898 (2d Dep't 2017), of which I am counsel, are in the process of moving for leave to the Appellate
Division Second Department to have those cases heard by the NY Court of Appeals.  Thus, it is anticipated that the
NY Court of Appeals will ultimately address the NYDOL Opinion Letter.

A.     **Plaintiff's FLSA Claims**

For at least some of the Collective Action Period, July 24, 2014 to October 13, 2015,

based on the effective date of the amendment as stated by the USDOL, a fact intensive analysis

will have to be undertaken in order to determine whether the HHAs at issue are subject to the

companionship exemption.[4]   More specifically, an analysis will have to be made as to whether

the HHA performed general household work "more than 20 percent of the time, and of course

any work, household work, that is related to the fellowship care or protection: of their client that

would negate the exemption." Severin, 2012 WL 25710 at *6.  As the court stated in Cowell v.

Utopia Home Care, Inc., 2016 WL 4186976 (E.D.N.Y.2016), such an analysis:

> would leave the Court having to conduct thousands of mini-trials
> to resolve the nature of each Plan of Care, the reason for each task
> assigned in each Plan of Care in order to determine whether it
> counts for the purpose of the twenty percent calculation, how much
> time was regularly spent on each task, and then the total amount of
> time spent on all tasks in order to determine whether each class
> member is ultimately exempt. Such an outcome is exactly what the
> collective action mechanism was designed to avoid.

Cowell, 2016 WL 4186976 at *7; see also Hypolite v. Health Care Services of New York, Inc.,

2017 WL 2712947 * 7 (S.D.N.Y.2017)(Citing to and agreeing with the holding in Cowell to the

effect that an HHA's claim for unpaid overtime pursuant to the FLSA is not appropriate for

collective action because it is highly fact-specific and does not involve similar facts). Thus, as

the respective courts held in Severin , Cowell and Hypolite with regard to the HHAs therein,

---

[4]  It should be noted that Plaintiff contends that pursuant to the case Hypolite v. Health Care Services of New York, Inc., 2017 WL 2712947 (S.D.N.Y.2017), the amendment took effect January 1, 2015.  It is respectfully submitted that this Court is not bound to that decision and deference should instead be given to the USDOL's notice discussed above stating that the amendment took effect on October 13, 2015 and was not enforced until November 16, 2015 for the same reasons deference should be given to the NYDOL Opinion Letter as discussed in Point II subsection B(2) supra. (See Exhibit "J").

Plaintiff's FLSA claims are also not properly suited for a collective action as the exact same

individual fact intensive analysis would be required in conjunction with the HHA job description

and each client's individual plan of care. (See Exhibits "D" and "E").

Moreover, Plaintiff has failed to satisfy "the much higher threshold" of FRCP 23(b)(3)'s

predominance requirement for class action status. See Myers, 624 F.3d at 556. In this regard, in

the context of Plaintiff's putative class action, the proper rate of overtime for each HHA under

the NYLL is dependent on the FLSA companionship exemption.  It would be in the interest of

each potential individual class member to demonstrate that the exemption does not apply and

establish an entitlement to the higher overtime rate set forth in 12 N.Y.C.R.R. § 142-3.2. Plaintiff

would obviously prefer a finding that she is not exempt under the FLSA and is entitled to

overtime calculated from her regular hourly rate rather than the minimum wage which can

obviously be taken from her declaration as well as that of Bellegarde. The predominance of these

individualized, fact-specific questions renders Plaintiffs' overtime claims ill-suited for classwide

resolution. See Severin at *7.

**B.      Plaintiff's NYLL 24 Hour Shift Minimum Wage and Overtime Claims**

In order to satisfy the predominance requirement of FRCP 23(b), Plaintiffs "must at this

stage show that more 'substantial' aspects of this litigation will be susceptible to generalized

proof for all class members than any individualized issues." Myers, 624 F.3d at 551. Because the

NYDOL Opinion Letter does govern interpretation of the NYLL's minimum wage provisions,

for the reasons addressed in Point II, Section B(2) supra, and Defendants notified Plaintiff of the

provision and of its decision to follow same, Plaintiff must show that Defendants improperly

excluded time from 24–hour sleep-in shifts to establish an NYLL minimum wage violation. (See

Exhibit "A").  More specifically, Plaintiff must show that she and others did not in fact receive

eight hours of sleep time or five hours of continuous sleep as well as three hours of meal breaks

while working sleep-in shifts. Plaintiff must also show that if she could not obtain such breaks, she notified Defendants of the issue and no appropriate remedy was implemented. (See Exhibit "A"). Whether or not an HHA actually received eight hours of sleep time and five hours of continuous sleep as well as three hours for meal breaks and/or notified his or her employer of the issue if he or she could not, and what action if any was taken, is an inherently fact-specific inquiry that is likely to hinge heavily on the characteristics of particular clients to whom sleep-in home attendants were assigned. See Severin.

While it is true that in paragraphs 25 through 30 of Plaintiff's supporting Declaration, she testified that on numerous occasions while working on 24 sleep-in shifts, she and other HHAs were only paid for 13 hours of the shift even though they were unable to sleep through the night and/or take meal breaks due to the needs of the client, resolving Plaintiff's minimum wage claims will require, at a minimum, establishing the truth or falsity of her sleep and meal break deprivation contentions, the frequency with which the issue arose for Plaintiff, whether she reported the problem to Defendants, and each Defendant's response. See Id. (See also Exhibit "A"). This same analysis would have to be made with regard to the entire class. Answering these questions is unlikely to "generate common answers apt to drive the resolution of" class litigation, or "resolve ... issue [s] that [are] central to the validity of each one of the [class] claims in one stroke." Id. quoting Wal–Mart, 131 S.Ct. at 2551. Thus, because Plaintiff has failed to show that common questions of law or fact predominate over individual ones as to her NYLL minimum wage claim and overtime claims, class certification of these claims must be denied as well. See Id. (Holding that the exact same minimum wage and overtime claims of HHAs working 24 hour shifts was not appropriate for collective and class action certification). For the exact same reasons, Plaintiff's request for a collective action must also be denied. Id. at *3

18

(holding that the very same fact-specific inquiries discussed above aren't really susceptible to a similarly-situated person analysis that would support the issuance of a collective action notice.).

**POINT IV**

**PLAINTIFF'S MOTION FOR CLASS AND COLLECTIVE CERTIFICATION MUST BE DENIED BECAUSE BOTH SHE AND BELLEGARDE WERE PAID THE PROPER MINIMUM WAGES AND OVERTIME RATES AND PROVIDED WITH APPROPRIATE NOTICE PURSUANT TO THE NEW YORK WAGE THEFT PREVENTION ACT**

Notwithstanding the fact as discussed above, that Plaintiff's motion for class and collective certification must be denied because a fact specific individualized analysis of each potential plaintiff's terms and conditions of employment must be undertaken in order to determine whether proper minimum and overtime wages were paid which is ill-suited for class-wide resolution, the motion must be denied because both Plaintiff and Bellegarde were paid proper hourly, minimum wage and overtime rates and provided with appropriate notice pursuant to the New York Wage Theft Prevention Act.

In this regard, as noticed by the USDOL, the federal agency charged with interpreting and enforcing the FLSA, the amendment to the FLSA companionship exemption precluding coverage to home health care agencies officially took effect on October 13, 2015 and was not enforced until November 12, 2015 due to a required 30 day notice and waiting period.  (See Exhibit "J").  Thus, according to the USDOL, due to the relevant 30 day notice and waiting period, prior to November 12, 2015, home health care agencies in New York such as Life Care were lawfully permitted to pay their HHAs overtime pay based on the New York minimum wage rate as long as they were covered by the companionship exemption. (See Exhibit "J").  At the very least, such agencies were permitted to do so up until October 12, 2015, the day prior to the October 13, 2015 effective date of amendment. (See Exhibit "J").

A review of the payroll records of both Plaintiff and Bellegarde show that Life Care not only paid each employee the proper New York Wage Parity Act rates but also changed its practice of paying overtime based on time and a half the New York State minimum wage to time and a half of each employee's regular hourly rate within the proscribed time period as defined by the USDOL's notice.  In this regard, the Wage Parity Act rate for HHAs during the time period of the commencement of the collective action period (July 24, 2014) to the latest date of the two employee's last day of employment, which is September 16, 2016 based on Bellegarde's last day of employment at Life Care, was as follows:

1.  From March 1, 2014 to February 28, 2015 the Wage Parity Act base wage rate was $9.50 per hour;

2.  From March 1, 2015 to December 31, 2016 the Wage Parity Act base wage rate was $10.00 per hour.

(See Exhibits "K" through "N").  A review of each employee's payroll records as attached to their Declarations and attached to the Declaration of Roselyn Zelman in opposition to the instant motion show that that they were each always paid the proper minimum wage rate based on wage parity.  (See Exhibits "F" and "H").

Moreover, Bellegarde's payroll records show that as of the payroll period commencing October 17, 2015 to her September 16, 2016 termination date, Bellegarde was paid regular wages of $10.00 per hour in compliance with wage parity and overtime at $15.00 per hour which is time and half her regular rate of $10.00 per hour. (See Exhibit "H").[5]  Similarly, Plaintiff's

---

[5] It should be noted that Bellegarde's payroll records show that after the October 15, 2015 effective date of the amendment, during the sole payroll period of October 31, 2015 to November 13, 2015, Bellegarde was paid an hourly overtime rate of $13.13 per hour for a total of 20 hours for work performed on the dates of November 12 and 13, 2015 which is less than she was entitled based on her base wage rate of $10.00 per hour. (See Exhibit "H" at pg. 2).  The actual deficiency would be $1.87 ($15.00 - $13.13) per hour which at 20 hours of overtime would total $37.40.  However, this minimal deficiency was corrected during the next pay period of November 14, 2015 to November 27, 2015 where an adjustment was made by paying Bellegarde an extra $37.40 that period as an overtime adjustment for the aforesaid dates. (See Exhibit "H" at pg. 2 at the "OT ADJ" notation).

records show that she was paid an overtime rate of $15.00 or more per hour based on the $10.00 per hour wage parity rate at the time commencing with the payroll period October 17, 2015 to her January 8, 2016 termination date. (See Exhibit "F").[6]

It is understood that Plaintiff claims that she was only paid for 12 hours of a 24 hour shift as opposed to 13 as required by the DOL Opinion letter.  In support of this allegation, Plaintiff cites the payroll records annexed to her Declaration.  Plaintiff is mistaken.  In this regard, a review of her payroll records show two entries of hours worked for each 24 hour shift.  Each of the two entries identifies that 6.50 hours was worked totaling 13 hours worked per 24 hour shift. While there exists some dual notations of 5.50 hours and 6.50 hours totaling 12 hours, there is always an adjustment of an extra hour under those notations thereby showing payment of a total of 13 hours.  Moreover, a review of Exhibit "F" attached to the Opposition Declaration of Roselyn Zelman shows that whenever Plaintiff worked on a Live In 24 hour shift, she was paid for a minimum of 13 hours. (See Exhibit "F" at the Liv-In notations).  Thus, Plaintiff's allegation that she was only paid for 12 hours of a 24 hour shift is simply incorrect.

Finally, contrary to the testimony set forth in their respective Declarations, both Plaintiff and Bellegarde were in fact provided with appropriate notice pursuant to the New York Wage Theft Prevention Act. (See Exhibits "G" and "I").  Thus, the claims made by both Plaintiff and Bellegarde in this regard are frivolous.

In light of the foregoing, Plaintiff's motion for class and collective certification must be denied for this additional reason because she cannot meet the requirement of showing that she

---

[6] For the same reasons as addressed in footnote 3 supra, the deficiency of the $13.13 overtime rate paid to Plaintiff for five hours worked on November 5, 2017 constituting a total of ($1.87 x 5) $9.35 was paid to plaintiff via an overtime adjustment of $18.00 during the next payroll period of November 14, 2015 to November 27, 2015.  (See Exhibit "F"). In any regard, Plaintiff worked overtime a total of 2 pay periods from the October 15, 2015 effective date of the amendment to her January 8, 2016 termination date and therefore if any deficiency still exists with regard to overtime it is de-minimus.  (See Exhibit "F"). Importantly, there exists no violation after the November 16, 2015 U.S.DOL sanctioned enforcement date of the amendment. (See Exhibits "F" and "J").

and other employees were victims of a common policy or plan that violated the either the FLSA or NYLL. See Romero v. ABCZ Corp., 2015 WL 2069870, at *1 (S.D.N.Y.2015) citing Myers, 624 F.3d at 555.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court enter an Order denying Plaintiff's Motion seeking the Court's certification of a Class and Collective Action.

Respectfully submitted,

Dated: New York, New York          By: _____
       November 20, 2017                 Aaron C. Schlesinger
                                         PECKAR & ABRAMSON, P.C.
                                         Attorneys for Defendants
                                         Life Care Services, Inc. d/b/a "Life
                                         Care" and Roselyn Zelman
                                         41 Madison Avenue, 20th Floor
                                         New York, New York 10010
                                         (212) 382-0909