UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                              :

CARMEN RODRIGUEZ DE CARRASCO,      :
individually and on behalf of all other persons  :
similarly situated,                 :

                  Plaintiffs,       :

                             :

         -v-                 :

LIFE CARE SERVICES, INC. d/b/a "Life Care,":
ROSELYN ZELMAN and JOHN DOES #1-10,  :

                Defendants.      :

------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: December 15, 2017

17-cv-5617 (KBF)

OPINION & ORDER

KATHERINE B. FORREST, District Judge:

On July 24, 2017, plaintiff Carmen Rodriguez de Carrasco ("Carrasco") brought this action against defendants Life Care Services, Inc. ("Life Care"), and Roselyn Zelman, for violations of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 et seq., and New York Labor Laws § 663(1) et seq., § 198(1-a), breach of contract, and unjust enrichment.

On October 30, 2017, plaintiff moved both to conditionally certify a collective action under 29 U.S.C. § 216(b) and also for class certification of her NYLL claims pursuant to Rules 23(a) and 23(b)(2) and (3). Fed R. Civ. P. 23.

For the reasons set forth below, the motion is GRANTED in part and DENIED in part.

## I.    FACTUAL BACKGROUND

In support of her motion for certification, plaintiff submitted a declaration from herself (ECF No. 18, Carrasco Decl.), and Home Healthcare Aide ("HHA") Marie Bellegarde (ECF No. 19, Bellegarde Decl.).  In opposition to plaintiff's motion, defendants submitted a declaration from defendant Zelman (ECF No. 23, Zelman Decl.), attached to which were, inter alia, exhibits relating to defendants' policies, payroll, and job descriptions.

Plaintiff is an HHA employed by defendant Life Care.  Life Care is a New York Corporation; its Executive Director and Chief Executive Offer is Roselyn Zelman, who has held that position for the last six years.  (Compl. ¶¶ 9–11.)

Plaintiff has been employed by Life Care from about July 28, 2009 until about January 8, 2016 (the "Time Period").  (Id. ¶ 29.)  In her capacity as an HHA, plaintiff was sent to clients' homes to provide care, and frequently worked twenty-four hour shifts.  (Id. ¶ 1.)  She alleges that during her twenty-four hour shifts, she often did not receive meal breaks or get five hours of uninterrupted sleep.  (Id.)  She also alleges that she frequently worked more than forty hours a week, and that when she worked more than forty hours, she was not always paid time and one half the minimum wage or time and one half her standard rate after January 1, 2015. (Id. ¶¶ 2, 33.)

Carrasco states that her duties included inter alia, cleaning, cooking, laundry, taking out the garbage, and cleaning the refrigerator; she alleges 30% of her work was household work.  (Id. ¶¶ 39, 46, 48, 49.)

Plaintiff alleges that defendants hired at least forty similar HHAs, who were also not paid proper overtime, or properly compensated for twenty-four hour shifts. (Id. ¶¶ 51–52).

Defendants attach their policies—including: 1) a policy that requires any HHA who does not take meal breaks or get uninterrupted sleep to report to Life Care; 2) wage statements for Carrasco and Bellegarde; and 3) the New York Labor Law 195.1 Notice of Pay Rate for Carrasco and Bellegarde. (Zelman Decl., Exs. A, F, G, H, I.)

Plaintiff seeks to certify two FLSA collective actions and five New York State classes as follows:

**FLSA Collective One**:  Employees Not Paid Time and One Half for Overtime after January 1, 2015 (the "FLSA Overtime Collective");

**FLSA Collective Two**:  Employees Paid Less than the Legally Required Minimum of 13 Hours for their 24 Hour Shifts (the "FLSA under 13 Collective");

**New York State Class One**:  Employees Not Paid Time and One Half for Overtime after January 1, 2015 (the "NY Overtime Class");

**New York State Class Two**:  Employees Paid Less than the Legally Required Minimum of 13 Hours for their 24 Hour Shifts (the "NY under 13 Class");

**New York State Class Three**:  Employees Not Paid a Full 24 Hours for 24 Hour Shifts (the "New York 24 Class");

**New York State Class Four**:  Employees Paid Less than Minimum Wages

under the Wage Parity Act (the "New York Wage Parity Class");

**New York State Class Five**:  Employees who did not Receive Proper Wage

Theft Prevention Act Notices (the "New York Wage Theft Prevention

Class").

## II.     LEGAL STANDARDS

### A.  FLSA Collective Certification

Section 216(b) of the FLSA authorizes employees to maintain collective

actions where they are "similarly situated" with respect to the alleged violations of

the FLSA.  29 U.S.C. § 216(b); Myers v. Hertz Corp., 624 F.3d 537, 555 (2d Cir.

2010).  Similarly situated employees must "opt in" to an action by filing a "consent

in writing to become . . . a party."  29 U.S.C. § 216(b).

Certification of a "collective action" is a two-step process in the Second

Circuit.  See Myers, 624 F.3d at 554–55.  At the first step—conditional

certification—the Court simply authorizes notice to be sent to potential similarly

situated plaintiffs.  Id. at 555.  Plaintiffs bear the light burden of making a "modest

factual showing" that the named initial plaintiffs and the potential opt-in plaintiffs

"together were victims of a common policy or plan that violated the law."  Id.

(quoting Hoffman v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997).  The

burden may be satisfied through the pleadings and affidavits alone.  Iglesias-

Mendoza v. La Bell Farm, Inc., 239 F.R.D. 363, 367 (S.D.N.Y. 2007).

At the second step, defendants have the opportunity to move for decertification if, after additional discovery, the record shows that the opt-in plaintiffs are not, in fact, similarly situated to the named plaintiffs. See Myers, 624 F.3d at 555.

B. Rule 23

A plaintiff seeking certification of a class must prove by a preponderance of the evidence that his or her proposed class meets the requirements of Federal Rule of Civil Procedure 23(a) and, if those requirements are met, that the class is maintainable under at least one of the subdivisions of Federal Rule of Civil Procedure 23(b). See Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 345 (2011); Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc., 546 F.3d 196, 201–02 (2d Cir. 2008). Here, defendants assert they have met all the requirements of Rule 23(b)(3).[1]

1. Rule 23(a) Prerequisites

Pursuant to Rule 23(a), a court must determine whether a proposed class satisfies four requirements: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.

In this Circuit, "numerosity is presumed at a level of 40 members." Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995) (citations omitted);

---

[1] In plaintiff's complaint, she states that she sues "on behalf of a class of persons under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure" and seeks certification pursuant to both (b)(2) and (b)(3). However, in her briefing, she mentions only (b)(3) certification and does not mention injunctive relief. The Court, therefore, proceeds with analyzing her proposed classes as (b)(3) classes.

however, "[p]laintiffs need not set forth an exact class size to establish numerosity." In re Bank of Am. Corp., 281 F.R.D. 134, 138 (S.D.N.Y. 2012).

To establish commonality, plaintiff must prove that "the class members have suffered the same injury." Wal-Mart, 564 U.S. at 350. This does not necessarily mean that all class members must have "suffered a violation of the same provision of the same law;" rather it requires a "common contention . . . capable of class-wide resolution—which means that its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id.

Typicality is satisfied when "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." In re Flag Telecom Holdings, Ltd. Secs. Litig., 574 F.3d 29, 35 (2d Cir. 2009). While there may be variations in fact pattern as between the named plaintiff and the other members of the class, if the same allegedly unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met. See Robidoux v. Celani, 987 F.2d 931, 936–37 (2d Cir. 1993). The possibility that damages may have to be determined on an individualized basis is not itself a bar to class certification. See Seiias v. Republic of Arg., 606 F.3d 53, 58 (2d Cir. 2010).

To satisfy the adequacy requirement, plaintiff must prove that the interests of the named plaintiff are not antagonistic to other members of the class, and that plaintiff's attorney is qualified, experienced, and able to conduct the litigation. See In re Flag Telecom, 574 F.3d at 35.

### 2. Rule 23(b) Requirements

In addition to meeting the Rule 23(a) requirements, in order to continue to maintain status as a class, the moving party must be able to demonstrate by a preponderance of the evidence that the class meets the requirements of one of Rule 23(b)'s subsections.

Rule 23(b)(3) allows certification if "the questions of law or fact common to all class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b); see Johnson v. Nextel Commc'ns Inc., 780 F.3d 128, 137 (2d Cir. 2015). In determining whether class certification is appropriate, the district court must receive enough evidence—by affidavits, documents, or testimony—to be satisfied by a preponderance of the evidence that each Rule 23 requirement has been met. See Teamsters Local 445, 546 F.3d at 202.

### C. The Amendment to the Home Health Care Exemption/Overtime Claim

Section 207 of the FLSA mandates certain overtime payments. Specifically, it requires overtime compensation "at a rate not less than one and one-half times the regular rate at which [the employee] is employed." 29 U.S.C. § 207(a)(1). However, the FLSA also contains several express statutory exemptions from this overtime pay requirement. One such exemption is for "any employee employed in domestic service employment to provide companionship services for individuals who . . . are unable to care for themselves." 29 U.S.C. § 213(a)(15).

Until recently, this exemption applied to all HHAs, unless they could show that their general household work exceeded 20% of the total weekly hours worked. However, in 2013 the Home Health Care exemption was narrowed, and no longer applies to HHAs employed by Third Party Employers.

In October 2013, the Department of Labor ("DOL") issued an interpretive regulation, the "Third Party Employment" regulation, 29 C.F.R. § 552.109 (2015) (the "DOL Regulation"), which stated that "Third party employers of [HHAs] may not avail themselves of the minimum wage and overtime exemption provided by section 13(a)(15) of the Act." At the same time it implemented a revised definition of "Companionship Services." 29 C.F.R. § 552.6 (2015). The regulations were intended to bring more HHAs into the scope of the FLSA. See Application of the Fair Labor Standards Act to Domestic Service, 78 Fed. Reg. 60454 (Oct. 1, 2013) (codified at 29 C.F.R. Pt. 552). The regulations were to take effect on January 1, 2015.

Before they could go into effect, the regulations were challenged in Federal Court; plaintiffs brought suit stating that the DOL had exceeded its rulemaking authority. The District Court for the District of Columbia agreed, and vacated both regulations. Home Care Ass'n of Am. v. Weil, 76 F. Supp. 3d 138, 147–48 (D.D.C. 2014); Home Care Ass'n of Am. v. Weil, 78 F. Supp. 3d 123, 130 (D.D.C. 2015). However, on appeal, the D.C. Circuit vacated the district court's vacatur orders, concluding that the DOL acted well within its authority when it promulgated the regulations, and that the regulations were reasonable in light of congressional

intent.  Home Care Ass'n of Am. v. Weil, 799 F.3d 1084, 1087 (D.C. Cir. 2015).  After the D.C. Circuit opinion, the DOL issued first, on September 14, 2015, a policy statement notifying the public that it would not bring enforcement actions against employers for violations of the regulations until "30 days after the date the Court of Appeals issues a mandate making its opinion effective."  Application of the Fair Labor Standards Act to Domestic Service; Announcement of 30-Day Period of Non-Enforcement, 80 Fed. Reg. 55,029 (Sept. 14, 2015).  It noted in the same statement, however, that the regulations "had an effective date of January 1, 2015."  Id.  On October 27, 2015, DOL released another policy statement, this time identifying November 12, 2015 (30 days after the issue of the mandate) as the last day of the non-enforcement policy.  Application of the Fair Labor Standards Act to Domestic Service; Dates of Previously Announced 30-Day Period of Non-Enforcement, 80 Fed. Reg. 65,646 (Oct. 27, 2015).

A number of cases have litigated when the DOL Regulation became effective.  The great majority of courts have found that the DOL Regulation was effective as of January 1, 2015, the date on which it was originally scheduled to take effect.  See Green v. Humana at Home, 2017 U.S. Dist. LEXIS 162961, at *1–2 (S.D.N.Y. Sept. 29, 2017); Hypolite v. Health Care Servs. of New York, Inc., 256 F. Supp. 3d 485, 492–93 (S.D.N.Y. 2017); Evans v. Caregivers, Inc., 2017 WL 2212977, at *3–4 (M.D. Tenn. May 19, 2017); Guerrero v. Moral Home Servs., Inc., 2017 WL 1155885, at *3–4 (S.D. Fla. Mar. 27, 2017); Dillow v. Home Care Network, Inc., 2017 WL 749196, at *3–5 (S.D. Ohio Feb. 27, 2017); Cummings v. Bost, Inc., 218 F. Supp. 3d

978, 986–87 (W.D. Ark. 2016); <u>Collins v. DKL Ventures, LLC</u>, 215 F. Supp. 3d 1059, 1066–67 (D. Colo. 2016); <u>Kinkead v. Humana, Inc.</u>, 206 F. Supp. 3d 751, 755 (D. Conn. 2016); <u>Lewis-Ramsey v. Evangelical Lutheran Good Samaritan Soc'y</u>, 215 F. Supp. 3d 805, 810 (S.D. Iowa 2016);. In this district, both courts to consider the issue have relied on the presumption of retroactivity. <u>Green</u>, 2017 U.S. Dist. LEXIS 162961, at *16 (stating that "although defendants . . . relied on the district court's vacatur of the third-party employer rule . . . the need to preserve the precedent-setting power of judicial decisions and the need to treat like litigants alike require retroactive application"); <u>Hypolite</u>, 256 F. Supp. 3d at 492–93 (stating that the presumption of retroactivity overcame any reliance issues that the defendant had, and also pointing out that the defendant was on notice since 2013 of his new obligations under the DOL Regulation).

Only a few courts have found that the DOL Regulation should <u>not</u> be considered effective as of January 1, 2015. <u>See, e.g.</u>, <u>Sanchez v. Caregivers Staffing Servs., Inc.</u>, 2017 WL 380912, at *2–3 (E.D. Va. Jan. 26, 2017) (finding that the D.C. District Court's vacatur "created a legal nullity, which prevented the DOL rule from becoming effective until the D.C. Circuit's opinion was made effective with its October 13, 2015, mandate"); <u>Bangoy v. Total Homecare Solutions, LLC</u>, 2015 WL 12672727, at *3 (S.D. Ohio Dec. 21, 2015).

The Court joins the other courts in this circuit and the majority of other courts to consider the issue in finding that the DOL Regulation took effect on January 1, 2015. The Court finds that the presumption of retroactivity of judicial

opinions is controlling here; any prejudice to defendants is not enough to overcome this fundamental tenet, articulated by the Supreme Court, for example, in <u>James B. Beam Distilling Co. v. Georgia</u>, 501 U.S. 529, 535–36 (1991) (holding that its decision holding a Hawaii state tax unconstitutional required Georgia to refund taxes collected under an identical state tax law collected prior to the decision) and by the Second Circuit in, for example, <u>Margo v. Weiss</u>, 213 F.3d 55, 60 (2d Cir. 2000) (stating as a general rule that "judicial precedents normally have retroactive as well as prospective effect" (internal quotation marks and citations omitted)).

In <u>Green v. Humana at Home</u>, the court concluded that "when the D.C. Circuit held that the third-party exemption was valid, this holding applied to <u>all</u> prospective defendants for any period after the rule went into effect," applying the presumption of retroactivity and rejecting defendant's argument that it had relied upon the district court's vacatur. 2017 U.S. Dist. LEXIS 162961 at *16. The <u>Green</u> Court's exploration of the presumption against retroactivity is lengthy and persuasive; this Court agrees with its analysis.

New York state law incorporates the federal law, and provides that those employees subject to the exemptions shall be paid overtime at a wage rate that is one and one-half times the basic minimum hourly rate. 12 N.Y.C.R.R. § 142.3-1 <u>et seq</u>.

### D. <u>Live-in Employees</u>

Under Federal Regulations, an employer can deduct up to eleven hours from a twenty-four hour shift by deducting eight hours of sleep time (so long as five of

those hours are uninterrupted), and up to three one-hour meal breaks.  See 29

C.F.R. §§ 785.22; 553.222(c).  Under New York Department of Labor Regulations, 12

NYCRR § 142-2.1(b) (the "New York Regulation"), until October 2017, provided as

follows:

> The minimum wage shall be paid for the time an employee is
> permitted to work, or is required to be available for work at a
> place prescribed by the employer, and shall include time spent in
> traveling to the extent that such traveling is part of the duties of
> the employee.  However, a residential employee—one who lives
> on the premises of the employer—shall not be deemed to be
> permitted to work or required to be available for work:
>> (1) during his or her normal sleeping hours solely because
>>     he is required to be on call during such hours; or
>> (2) at any other time when he or she is free to leave the
>>     place of employment.

(emphasis added).

In sum, the New York Regulation's plain language previously appeared to

mandate that the required minimum wage varied based upon the employee's

residential status, and not based upon whether he or she worked twenty-four hour

shifts.

However, on March 11, 2010, the New York Department of Labor (NYDOL)

issued an Opinion Letter (the "Opinion Letter") advising that "live-in employees . . .

must be paid not less than for thirteen hours per twenty-four hour period provided

that they are afforded at least eight hours for sleep and actually receive five hours

of uninterrupted sleep, and that they are afforded three hours for meals," regardless

of whether they are residential employees or not.  (N.Y. St. Dep't of Labor, Op. No.

RO-09-0169 at 4 [Mar. 11, 2010]).

Several New York state appellate courts concluded that the Opinion Letter conflicted with the New York Regulation and, hence, should not be followed. <u>See e.g.</u>, <u>Tokhtaman v. Human Care, LLC</u>, 149 A.D.3d 476, 477 (N.Y. App. Div. 2017) (affirming the lower court's denial of a motion to dismiss and stating that if plaintiff could prove that she was a non-residential employee, she would be entitled to be paid for all twenty-four hours of her shifts); <u>Andryeyeva v. New York Health Care, Inc.</u>, 153 A.D.3d 1216, 1218–19 (N.Y. App. Div. 2017) (finding that the NYDOL interpretation to be "neither rational nor reasonable, because it conflicts with the plain language of the Wage Order" and finding that if the members of the putative class were non-residential employees, they "were entitled to be paid the minimum wage for all 24 hours of their shifts, regardless of whether they were afforded opportunities for sleep and meals"); <u>Moreno v. Future Care Health Servs., Inc.</u>, 153 A.D.3d 1254, 1255–56 (N.Y. App. Div. 2017) (holding the same). The New York Court of Appeals has not yet addressed the question.

In contrast, the federal district courts in this district have found that the Opinion Letter is entitled to deference. In <u>Severin v. Project Ohr, Inc.</u>, 2012 WL 2357410, at *8 (S.D.N.Y. June 20, 2012) (Cote, J.), the court held that the letter did <u>not</u> conflict with the New York Regulation. According to the <u>Severin</u> Court, the New York Regulation itself stated, without explanation, that employees should be paid for time that they "are required to be available for work at a place prescribed by the employer." <u>Id.</u>; 12 N.Y.C.R.R. § 142-3.1. The Opinion Letter then interpreted the meaning of being "available for work at a place prescribed by the

employer in the context of home health aides working 24-hour shifts in the home of a client;" more specifically, HHAS are only available "for thirteen hours of the day, provided the aide is afforded at least eight hours for sleep and actually receives five hours of continuous sleep." Id. The Court thus found that the NYDOL interpretation was neither unreasonable nor irrational. Id. at *9. In Bonn-Wittingham v. Project O.H.R., 2017 WL 2178426, at *2–3 (E.D.N.Y. May 17, 2017), the court similarly found that the Opinion Letter was deserving of deference. (finding that Tokhtaman did not represent a change in controlling law, and therefore denying a motion for reconsideration). Further, it reasoned that the New York Court of Appeals was not likely to follow Tokhtaman.

While this Motion was pending, on October 25, 2017 the NYDOL amended 12 N.Y.C.R.R. § 142-2.1(b) to add the following provision:

> Notwithstanding the above, this subdivision shall not be construed to require that the minimum wage be paid for meal periods and sleep times that are excluded from hours worked under the Fair Labor Standards Act of 1938, as amended, in accordance with sections 785.19 and 785.22 of 29 C.F.R. for a home care aide who works a shift of 24 hours or more.

12 N.Y.C.R.R. § 142-2.1(b).

The amendment was promulgated, because:

> "The emergency regulation is necessary to preserve the status quo, prevent the collapse of the home care industry, and avoid institutionalizing patients who could be cared for at home, in the face of recent decisions by the State Appellate Divisions . . . that treat meal periods and sleep time by home care aides as hours worked for purposes of state (but not federal) minimum wage. [citing Tokhtaman and other New York state cases.] . . . [T]he Commissioner must take action now to avert an impending crisis. Emergency adoption of this regulation is necessary for the preservation of the public health, safety, and general welfare to

14

ensure that home care aides will be available to provide care for, and avoid the institutionalization of, those who rely on home care. <u>The purpose and intent of this rulemaking is to narrowly codify the Commissioner's longstanding and consistent interpretation that compensable hours worked under the State Minimum Wage Law do not include meal periods and sleep time of home care aides who work shifts of 24 hours or more</u>.

(Zelman Decl., Ex. O, 10/25/17 N.Y. St. Reg. LAB-43-17-0002-E) (emphasis added).

The Court here joins the other federal district courts that have considered the issue and rejects the <u>Tokhtaman</u> line of cases from the New York Appellate Division. The Court finds, as did the <u>Severin</u> Court, that the Opinion letter is <u>not</u> in conflict with the regulation; rather it <u>expands</u> upon the Regulation, by defining what it means to be "available for work." The Court also concurs with the <u>Severin</u> Court that the Opinion Letter is neither "unreasonable" nor "irrational." <u>Severin</u>, 2012 WL 2357410, at *9. The Court's interpretation is bolstered by the October 2017 Amendment to the Regulation and accompanying statement of intent—to "codify the Commissioner's longstanding and consistent interpretation that compensable hours worked under the State Minimum Wage Law do not include meal periods and sleep time of home care aides who work shifts of 24 hours or more." (Zelman Decl., Ex. O.)

## III.  DISCUSSION

Plaintiff seeks a variety of collective and class action certifications. For the reasons forth below, the Court GRANTS both conditional certification of an FLSA

collective and class certification of a New York state class on the overtime issue alone. The Court DENIES collective and class certification on any other issue.

A. Overtime Collective and Class

1. FLSA Collective

Plaintiff argues that she has made the "modest factual showing" required for FLSA conditional certification—and that she can show that she, along with other potential opt-in members, "were victims of a common policy or plan that violated the law." See Myers, 624 F.3d at 554–55.

More specifically, plaintiff claims she is a victim of defendants' policy to pay only time and a half the minimum wage for overtime between January 1, 2015 and October 13, 2015, the date at which defendants maintain the Third Party Employment Regulation took effect.

In support of this claim, she submits pay stubs showing that, throughout the relevant period, she was paid a regular rate of between $10.38 and $11.15 an hour; but consistently paid overtime at a rate of only $13.13 per hour. (Carrasco Decl., Ex. A.) She further submits her own sworn declaration that she "was not paid time and one half for my overtime hours worked after January 1, 2015" (Carrasco Decl. ¶ 5) as well as a declaration from Marie Bellegarde stating that she, too, "was not paid full time and one half for [her] overtime hours." (Bellegarde Decl. ¶ 6.) Defendants submit pay stubs for both Carrasco and Bellegarde, including pay stubs from September and October 2015, which show that Bellegarde received a regular

pay rate of either $10 or $11 per hour, but overtime only at $13.13 per hour.

(Zelman Decl., Ex. H.)

Both Carrasco and Bellegarde's sworn declarations state that "[d]efendant hired at least 40 similar health home aides/maids, who also were not paid their overtime at the full time and one half rate." (Carrasco Decl. ¶ 23; Bellegarde Decl. ¶ 18.)

Defendants' primary argument is that the DOL Regulation did not take effect until October 13, 2015. Thus, they maintain that a collective action is not warranted, since: "[f]or at least some of the Collective Action Period, July 24, 2014 to October 13, 2015 . . . a fact intensive analysis will have to be undertaken in order to determine whether the HHAs at issue are subject to the companionship exemption." (Defs.' Opp. at 16.) The Court disagrees.

As a preliminary matter, while the Collective Action Period begins July 24, 2014, the specific FLSA Collective that plaintiff seeks to certify is for "Employees Not Paid Time and One Half for Overtime after January 1, 2015." Thus, any overtime issues predating January 1, 2015 would not be relevant to the proposed collective here.[2] Furthermore, as discussed above, the Court finds that the DOL Regulation took effect on January 1, 2015.

---

[2] The Court agrees with defendants that a collective pre-dating January 1, 2015 on this issue would likely be fact-specific as to the type of work provided by each individual HHA.

Thus, the Court finds that plaintiffs have met the light burden required at this stage, and therefore certifies a § 216(b) Collective of "Employees Not Paid Time and One Half for Overtime after January 1, 2015."

2. Rule 23

In order to certify a Rule 23 class, the party seeking certification must demonstrate by a preponderance of the evidence that she has met both the Rule 23(a) prerequisites to certification and also the requirements of one of the 23(b) subsections. Novella v. Westchester Cty., 661 F.3d 128, 149 (2d Cir. 2011).

a. Rule 23(a) Prerequisites

Pursuant to Rule 23(a), a plaintiff seeking certification must demonstrate numerosity, commonality, typicality, and adequacy of representation. As to numerosity, plaintiff alleges that defendants have failed to pay "at least 40" other HHAs the appropriate rate of overtime between January 1, 2015 and October 13, 2015. Defendants do not challenge this assertion. Thus, the Court finds that numerosity is established.

Plaintiff's allegations of commonality, typicality, and adequacy are simple, strong, and virtually unchallenged. As to commonality, plaintiff presents a common question for resolution: "whether defendants paid time and one half the wage rate for overtime." As to typicality, plaintiff argues that she was subjected to the common policy and does not assert any individualized defenses. As to adequacy of representation, plaintiff states that she has "adequate personal knowledge of the essential facts of the case," and that her interest, collecting unpaid wages, is not

antagonistic to other members of the class.   She also attaches a biography of her attorney, William C. Rand.  (ECF No. 20, Rand Decl., Ex. C.)  Mr. Rand has been practicing law since 1992, is a graduate of Harvard College and Fordham Law School, and has handled more than 100 FLSA cases, including at least six class action FLSA lawsuits.  (Id.)

Defendants do little to answer any of plaintiff's assertions under Rule 23(a) as to their overtime policy.  Rather, they rely on their statement, already discussed above, that the analysis of the overtime claims requires an "individual fact intensive" analysis.  They provide no specific argument or factual materials relating to numerosity, commonality, typicality, or adequacy.  Because the Court finds plaintiff's showing strong and clear, as well as essentially uncontroverted, it finds that plaintiff has satisfied the 23(a) requirements.

### b.  Rule 23(b)(3) Requirements

In order to maintain a Rule 23(b)(3) damages class, plaintiff must establish both that "questions of law or fact common to class members predominate" and also that "class action is superior to other available methods for fairly and efficiently adjudicating the controversy."   Fed. R. Civ. P. 23(b)(3).

Here, plaintiff asserts that both predominance and superiority are present. She states that the main legal issue—whether the defendants violated New York state law by not paying time and one half the regular rate for overtime hours—is subject to generalized proof.   Moreover, she asserts that a class action is the superior method for resolution, stating that one-time resolution as to defendants'

liability for overtime in the challenged period will be efficient for all parties. Defendants, in answer, merely regurgitate their argument that the DOL Regulation was not in force until October 13, 2015, and thus that individual issues of fact as to who qualifies for the exemption predominate.

Because, as stated above, this Court finds that the DOL Regulation went into effect on January 1, 2015, the Court disagrees and finds that common questions predominate over individualized ones for the challenged period—January 1, 2015 through October 13, 2015.

Therefore, the Court certifies a New York class of employees who were not paid time and one half for overtime after January 1, 2015.

B. The New York 24 Hour Class

Plaintiff also moves to certify a New York class of employees not paid a full twenty-four hours for twenty-four hour shifts.

In support of class certification, plaintiff points to the same factors enumerated above. Defendants argue that "the NYDOL Opinion Letter . . . govern[s] interpretation of NYLL's minimum wage provisions" and that, therefore, the only way plaintiff could establish a class is by showing that:

> [S]he and others did not in fact receive eight hours of sleep time or five hours of continuous sleep as well as three hours of meal breaks while working sleep-in shifts. Plaintiff must also show that if she could not obtain such breaks, she notified Defendants of the issue and no appropriate remedy was implemented.

(Defs.' Opp. at 17–18.)

Here, the Court agrees with defendants. As discussed above, the Court finds that the NYDOL Opinion letter is deserving of deference. As such, an employee should only be paid twenty-four hours if she, in fact, is not receiving the appropriate meal and sleep breaks. As a result, individualized and not common questions predominate—and thus, class action is not the superior method of adjudication for the 24 Hour Claims. The Court therefore DENIES class certification on this issue.

C. The Remaining Collectives and Classes

Plaintiff proposes several other collectives and classes. For varying reasons, the Court DENIES certification for each one. The Court briefly summarizes below.

1. The FLSA Under 13 Collective and New York Under 13 Class

Plaintiff moves to certify both a FLSA Collective and a New York class for "employees paid less than the legally required minimum of 13 hours for their 24 hour shifts." (ECF No. 21, Pl.'s Mem. in Supp. at 3). She alleges that "Defendants had a policy to pay home health aides for only 12 hours of their 24 hour shifts." (Id.) In support, she attaches Bellegarde's pay stubs, indicating that Bellegarde was frequently paid for twelve hour shifts. (Bellegarde Decl., Ex. A.) Bellegarde's sworn declaration, however, does not mention that she was ever paid only twelve hours for a twenty-four hour shift. (Bellegarde Decl.)

Furthermore, in defendants' opposition, defendant Zelman states that "Bellegarde worked 12 hour shifts as an HHA." (Zelman Decl. ¶ 17.) Plaintiff fails to address this in her reply, and furthermore she revises her proposed classes and collectives, omitting the Under 13 Collective and Class, without stating a reason.

21

In light of the above, the Court does not find by a preponderance of the evidence that defendants had a policy to pay less than the required thirteen hours for twenty-four hour shifts.  Accordingly, plaintiff's motion to certify a FLSA collective and New York state class of those paid less than thirteen hours is DENIED.

## 2.  The New York Wage Parity Class

Plaintiff proposes a New York state class of "employees paid less than the minimum wage under the Wage Parity Act."  (Pl.'s Mem. in Supp. at 4.)  She claims that "defendants failed to pay minimum wages under the Wage Parity Act."  (Id.)

The Wage Parity Act ("WPA") required, after March 1, 2014, that HHAs be paid "total compensation" of $14.09 an hour, at least $10 in cash, and up to $2.40 in health care benefits and up to $1.69 in additional compensation—which could include, inter alia, "supplements in lieu of benefits and compensated time off." N.Y.P.B.H. § 3614-c(b).  Plaintiff's only evidence of any policy to pay less than what New York state requires is that both Carrasco's and Bellegarde's pay stubs show a simple pay rate of $10, or sometimes $11.15, an hour.  (See Carrasco Decl., Ex. A.; Bellegarde Decl., Ex. A.)  Defendants respond that they were in compliance with the WPA, attaching exhibits that show the base wage for the relevant periods.  (Zelman Decl., Exs. K–N.)

Nowhere on the pay stubs submitted by either side is there any indication as to benefits and supplementary income any HHA might be receiving.  The pay stubs indicate only base pay rate, with which defendants are in compliance.

Therefore the Court finds no support for the claim that defendants were not in compliance with the WPA; certification on this issue is therefore DENIED.

### 3. New York Wage Theft Prevention Class

Finally, plaintiff moves to certify a New York state class of "employees who did not receive proper wage theft prevention notices." (Pl.'s Mem. in Supp. at 4.) She states that "[d]efendant failed to provide accurate Wage Theft Prevention Act notices as their notices and payroll did not correctly identify the rate being paid to the home health aides and did not indicate the correct hours worked." (Id.) Again, she relies upon Carrasco's and Bellegarde's pay stubs.

The New York Wage Theft Prevention Act, N.Y.L.L. § 195(1)(a), requires every employer to "provide his or her employees, in writing in English and in the language identified by each employee as the primary language of such employee, at the time of the hiring, and or on before February first of each subsequent year of the employee's employment with the employer, a notice containing the following information: the rate or rates of pay and basis thereof . . . ."

In response, defendants attach the relevant Wage Theft Prevention Act ("WTPA") notices. (Zelman Decl., Exs. G, I.) Plaintiff argues in reply that "defendants' notice signed by Carrasco falsely stated her hourly rate as $10 per hour when her paystubs indicated it was $11.15 per hour." (ECF No. 25, Pl.'s Reply at 6.) This argument is weak; Carrasco's WTPA notice was given to her on April 29, 2014, and states an hourly rate of $10 per hour, while the paystubs are from the period ranging from August 2015 through February 2016, in which her pay rate was

$11.15 per hour.  The Court will not conclude that WTPA notices were incorrectly provided as a policy based on a single notice given more than a year before any attached pay stubs, particularly when such notices are required to be given on an annual basis.

Finally, plaintiff argues that the defendants violated the WTPA when they failed to provide Notice in Spanish.  For this she relies on her own declaration that Spanish is her primary language.  (Carrasco Decl. ¶ 32.)  The WTPA requires notice in both English "and the language identified by each employee as [her] primary language."  N.Y.L.L. § 195(1)(a).  The WTPA Notice has a box for each employee to check stating either that: 1) English is her primary language; or 2) English is not her primary language, but she will accept the notice in English because the NYDOL doesn't make a form in her language.  In this case, neither box was checked.  Rodriguez and Bellegarde neither confirmed nor denied that English was their primary language, at least on the exhibits that defendants have offered.  On this scant evidentiary showing, the Court does not conclude that defendants had a policy of incorrectly providing WTPA notice.

Accordingly, certification of this class is also DENIED.

*          *          *

In sum, the Court both: 1) conditionally certifies a FLSA collective of "employees not paid time and one half for overtime after January 1, 2015;" and 2) certifies a New York state Rule 23(b)(3) class of "employees not paid time and one

half for overtime after January 1, 2015." The Court denies certification to any other proposed classes and collectives.

The Court hereby ORDERS that, consistent with the rulings above, the parties confer on two forms of notice: 1) one for the class pursuant to § 216(b); and 2) for the class pursuant to Rule 23, **not later than December 22, 2017.** Defendants shall provide the names, addresses, and emails of all current and former employees (of which they are aware) within the classes as indicated.

Following the Court's approval of the notices, notice shall be sent **not later than January 4, 2018** and shall run for a period of forty-five days, or until **February 20, 2018.**

IV.    CONCLUSION

For the reasons discussed above, plaintiff's motion is GRANTED in part and DENIED in part.  The Clerk of Court is instructed to terminate the motion at ECF No. 17.

SO ORDERED.

Dated:      New York, New York
            December 15, 2017

_____
KATHERINE B. FORREST
United States District Judge